# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **WELLS FARGO BANK, N.A.,** } | |
| } | |
| Plaintiff, } | |
| } | |
| v. } | Case No.: 2:10-CV-1433-RDP |
| } | |
| **JAMES V. YOUNG,** } | |
| } | |
| Defendant. } | |

## MEMORANDUM OPINION

The court has before it Plaintiff's Motion for Summary Judgment, Brief in Support, and Evidentiary Submission in Support of its Motion for Summary Judgment, filed January 4, 2011. (Docs. # 25, 26, 27).[1] Defendant James V. Young filed a response (Doc. # 29) on January 26, 2011, to which Plaintiff filed a reply (Doc. # 30) on February 11, 2011. Included in Plaintiff's reply as "Exhibit A" is a copy of the contract between Sterling Metal Products and DeanCo Auction, a third party company hired to facilitate the auctioning of Sterling Metal Production's property. (Doc. # 30-1). Because this exhibit was not part of the original Rule 56 record, the court extended to Defendant an opportunity to respond to the additional evidence by June 23, 2011 (Doc. # 34); Defendant failed to respond. For the reasons outlined below, the court finds Plaintiff's Motion for Summary Judgment is due to be granted on the liability claim and denied as to damages.

---

[1] On or about August 18, 2010, upon Plaintiff's motion, this court entered a default judgment against Defendant Sterling Metal Products, Inc. in light of its failure to appear and defend this action. (Doc. # 17). Subsequently, around June 17, 2011, former co-defendant Michael S. Hildreth was dismissed without prejudice by this court based on his petition for Chapter 7 relief filed with the U.S. Bankruptcy Court. (Doc. # 36). Because the co-defendants are jointly and severally liable for any outstanding debt (Doc. # 1-3 at 1, 7), this action continues with respect to James V. Young.

I.      SUMMARY JUDGMENT STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure and is the prescribed manner by which claims which do not involve genuine issues of material fact should be resolved. Fed. R. Civ. P. 56. The parties need not agree on every fact; rather, the law requires only that the moving party show "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Whether a fact is material is determined by the substantive law applicable to a particular case. *See Anderson*, 477 U.S. at 248.

If the moving party shows that there is no genuine dispute of material fact, the burden shifts to the nonmoving party to provide specific facts to show the existence of a genuine dispute. *See Southern Solvents, Inc. v. New Hampshire Ins. Co.*, 91 F.3d 102, 104 (11th Cir. 1996). Although the nonmovant is entitled to justifiable inferences from the undisputed facts, he cannot rest solely upon his pleadings. Fed. R. Civ. P. 56(c). Furthermore, "[a] mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice . . . [and] if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997) (internal citations omitted).

II.     RELEVANT UNDISPUTED FACTS

The undisputed facts are as follows:[2]

---

[2] The court largely adopts the "facts" as stated in Wells Fargo's Brief in Support of its Motion for Summary Judgment (Doc. # 26) because, for the most part, those facts are found in the Rule 56 file and have not been disputed by Defendant.

Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo" or "Plaintiff"), is a successor by merger to Wachovia Bank, National Association.[3]  Plaintiff made a loan to Sterling Metal Products, Inc. ("Sterling Metals" or "Borrower") ("Loan 1"), as evidenced by a Promissory Note dated August 30, 2006 made in the original principal amount of $171,760.00 ("Note 1"). (Doc. # 27-1 ¶ 3).  Plaintiff made another loan to Borrower ("Loan 2"), as evidenced by Promissory Notes made by Borrower in favor of Plaintiff.  The most recent Promissory Note was dated May 2, 2008 and in the original principal amount of $250,000.00 ("Note 2").  (Doc. # 27-1 ¶ 4).

To secure the above-referenced loans, Borrower granted Plaintiff a security interest in all of its property, including accounts, equipment, inventory, and general intangibles (collectively, the "collateral"). (Doc. # 30 at 3).  In addition to the Borrower's obligations under the Promissory Notes to pay the principal of and interest on the loans, each note provides that the holder is entitled to recover its costs and expenses, including attorneys' fees, incurred in collecting any sums due and owing.  (Doc. # 27-1 ¶ 5).

As an inducement for Plaintiff to make the Loans, Defendant (along with his former co-Defendant, Michael S. Hildreth) unconditionally guaranteed payment of the loans and other sums due on the notes.  (Doc. # 27-1 ¶ 6).  Defendant's guarantee is evidenced by an Unconditional Guaranty dated March 3 and August 30, 2006, made by Defendant in favor of Lender. (*Id*.)  The Guaranty, together with the Notes and any document or instrument further evidencing or securing the Loans, are collectively referred to herein as the "Loan Documents."

---

[3] Wachovia Bank is the entity that actually made the loans at issue here.  Notwithstanding this fact, for ease of reference the court will discuss the Rule 56 facts as if Plaintiff acted in making the loans.

In addition to Defendant's obligations under the Guaranty to pay the principal of and interest on the Loans, the Guaranty provides that the guarantor shall also be liable for costs and expenses, including attorneys' fees, incurred in collecting the obligations due under the Loans. (Doc. # 27-1 ¶ 7). Upon proper demand to do so, Defendant failed or refused to pay all amounts when due and as required under the Loan Documents; therefore, he has defaulted on his respective obligations thereunder. (Doc. # 27-1 ¶ 8). The amount outstanding on Loan 1 as of December 30, 2010, exclusive of expenses of collection, attorneys' fees and the costs of this action, is $141,847.74.[4] That amount includes outstanding principal in the amount of $116,944.59, accrued and unpaid interest in the amount of $21,253.15, and late charges in the amount of $3,650.00. (Doc. # 27-1 ¶ 9). Interest, attorneys' fees, and other costs of collection continue to accrue. (*Id.*) The amount outstanding on Loan 2 as of December 30, 2010, exclusive of expenses of collection, attorneys' fees and the costs of this action, is $266,010.81. (Doc. # 27-1 ¶ 10). That amount includes outstanding principal in the amount of $248,771.24, accrued and unpaid interest in the amount of $16,037.78, and late charges in the amount of $1,201.79. (*Id.*) Interest, attorneys' fees, and other costs of collection continue to accrue. (*Id.*) As of December 30, 2011, the attorneys' fees and expenses incurred in collecting the loans amounted to $12,071.25. (Doc. # 27-2 ¶ 6).

## III.   ANALYSIS

To secure the loans, Borrower granted Plaintiff a security interest in all of Borrower's personal property, including accounts, equipment, inventory, and general intangibles (collectively, the "collateral"). (Doc. # 30 at 3). In light of the default existing under the Loan Documents,

---

[4] The court has corrected an apparent mathematical error: Plaintiff's brief in support of its motion for summary judgment calculated a total of $141,847.81; this amount has been decreased by $0.07 to reflect the sum of the outstanding principal ($116,944.59), accrued and unpaid interest ($21,253.15), and late charges ($3,650.00) provided by Plaintiff.

Plaintiff initiated plans to exercise its UCC lien by liquidating the collateral and then applying the proceeds of any disposition to the outstanding indebtedness. (*See* Doc. # 29 at 5) (email correspondence between Plaintiff's counsel and Defendant). Plaintiff's disposition plan was then executed and the Collateral sold using a third party auction company. The auction was conducted on the internet; bidding started on October 20, 2010 and was held open for seven days.

In his response to Plaintiff's summary judgment motion, Defendant does not deny liability under the Loan Documents. (Doc. # 29 at 1-3). He argues instead that Plaintiff's disposition of the collateral was commercially unreasonable, resulting in a less favorable offset to the amount owing under the Loan Documents. Specifically, Defendant alleges an inadequate effort to advertise the auction or retrieve reasonable proceeds from the sale. Plaintiff responds to this argument by asserting that (1) Defendant lacks standing to raise this defense, (2) the standards of commercial reasonableness are inapplicable here because Alabama's version of the UCC does not apply in this case, and (3) in any event, the sale was commercially reasonable. Those arguments will be addressed in turn.

      **1.     Defendant's Standing to Raise the Defense.**

First, Plaintiff argues that Defendant lacks standing to raise the issue of commercial reasonableness on behalf of Borrower, the corporation that owned the collateral and signed the auction contract. Plaintiff correctly notes that a shareholder cannot pursue causes of action for injuries allegedly done to that shareholder's corporation (Doc. # 30 at 9); however, Defendant's status as a shareholder is not what triggers his standing to raise the Section 610(a) defense. Rather, Defendant's status as a secondary obligor/guarantor is what permits him to raise the standing defense

5

with respect to his *own* liability.  Indeed, Alabama's version of the UCC[5] provides ample grounds for a secondary obligor/guarantor to assert similar rights as might a primary debtor.  *See, e.g.,* Ala. Code § 7-9A-102(a)(71) (definition of secondary obligor which encompasses a guarantor such as Defendant); *id.* § 7-9A-601(d) (extending after-default rights to both debtor and obligor); *id.* § 7-9A-607(c) (proscribing that a secured party proceed in a commercially reasonable manner for a debtor or a secondary obligor).  Thus, Defendant retains every right to insist that the collateral securing a loan for which he is responsible be sold in a commercially reasonable manner.

      **2.**      **Application of Alabama's UCC Provisions.**

Next, Plaintiff argues that regardless of Defendant's standing, the standards of commercial reasonableness are not applicable as the auction was never subject to Alabama's version of the Uniform Commercial Code (the "UCC").  The UCC states in pertinent part that "[a]fter default, a secured party may sell, lease, license, or *otherwise dispose* of any or all of the collateral in its present condition or following any commercially reasonable preparation or processing." Ala. Code § 7-9A-610(a) (emphasis added).  According to Plaintiff, this provision does not apply because Borrower, not Wells Fargo, actually disposed of the Collateral.  In support of its argument, Plaintiff notes that it (1) did not repossess the collateral and (2) did not sign the auction contract.  This argument is off the mark.

First, to be sure, a secured party can be subject to the UCC without having repossessed any collateral.  *See* Ala. Code § 7-9A-610 (stating the standards apply "[a]fter default" without

---

[5] Alabama adopted the UCC and codified it at Ala. Code. § 7-1-101, *et seq*.  The Alabama UCC contains some variations from the official text of the UCC, but they are not relevant here.  Ala. Code § 7 (Code Commissioner's Notes).  The provisions of the Alabama UCC correspond to the provisions of the UCC, except that the number seven "has been inserted [in the Alabama UCC] preceding each section number." *Id*.

mentioning repossession as a requirement). Plaintiff's only support for claiming that repossession is more critical than default when determining whether to apply the UCC is a case out of Virginia, but that decision appears to support just the opposite position. (Doc. # 30 at 6) (quoting *Barnette v. Brook Road, Inc.*, 457 F. Supp. 2d 647, 659 (E.D. Va. 2006)). In *Barnette*, the plaintiff (obligor) attempted to buy a new car from a dealership. However, after she took the car home, the dealership learned that her request for financing had been denied. Shortly thereafter the dealership repossessed the car, prior to any payment being due. An issue then arose as to whether the dealership was subject to the UCC despite the fact that the obligor had yet to actually default on a payment. As Plaintiff points out in its Reply Brief, *Barnette* held that, "[i]t is the secured party's repossession of the collateral [prior to disposition], not necessarily the default, that triggers the [UCC]." (Doc. # 30 at 6.); *Barnette*, 457 F. Supp. 2d at 659. Read in proper context, this language is best understood to mean that although default is always sufficient to trigger the application of the UCC, it may not always be necessary. For instance, on the facts in *Barnette*, the UCC's provisions may apply even when no default has yet occurred but a repossession has taken place. Indeed, it would make little sense to require repossession in order to trigger UCC protection. If that were a limitation imposed by the statute, an otherwise compliant debtor would be discouraged from voluntarily turning over collateral.

Plaintiff's second argument, that Borrower signed the auction contract and therefore disposed of the collateral itself, is also without merit. It may be true that a secured party will not be held to the standards of the UCC when a rogue defaulter takes initiative to dispose of her own assets unaided by that secured party. However, this is simply not what occurred here. Although Plaintiff paints a picture portraying itself as a back seat passenger, the Rule 56 record makes clear that it was Wells

Fargo which was driving the disposition of the collateral from the beginning. That is, Plaintiff formulated and orchestrated the plan to have the collateral sold by DeanCo Auction, worked with DeanCo to create the terms of the auction contract, and covered the up-front costs of having an auction. (Doc. # 29 at 5-6) (emails between Plaintiff's counsel and Defendant regarding the general disposition plan). Nearly every detail of the auction was outlined and controlled by Plaintiff, including who should sign the actual contract with DeanCo. (*Id*.) Plaintiff specifically requested that Borrower sign the contract in order to decrease legal fees and open a more direct line of communication between DeanCo and Borrower. (*Id*.)

In sum, Plaintiff did not sit idly by while Sterling Metals took it upon itself to sell the collateral; Plaintiff was the driving force behind this disposal and its details. Under these undisputed facts, the fact that Borrower signed the auction contract is not controlling. The language of section 610(a) is clear: when a secured party takes initiative to "otherwise dispose of" collateral, the UCC standards apply. Ala. Code § 7-9A-610.

        **3.**       **Commercial Reasonableness of the Disposition.**

Finally, Plaintiff argues that even if Defendant has standing and Alabama's UCC standards apply, the auction constituted a commercially reasonable disposition. (Doc. # 30 at 7.) Rather than provide evidence that may suggest the particular auction conformed to any sort of industry standard, Plaintiff cites case law stating that this issue is now a question of law. (*Id*.) (citing *Leasing Serv. Corp. v. River City Constr., Inc.*, 743 F.2d 871, 878 (11th Cir. 1984)) (the issue of commercial reasonableness is generally a question for the finder of fact unless there are no disputes as to material facts, in which case the issue becomes a question of law).

Even assuming there are no disputes regarding the facts of the disposition, this court cannot conclude that the auction was commercially reasonable as a matter of law. While Plaintiff correctly notes that in general an auction is an acceptable "manner" of disposition according to the UCC, the details of how an auction is conducted are not insignificant and may violate any number of UCC standards.[6] *See* Ala. Code. § 7-9A-610(a). Here, Plaintiff has failed to offer any evidence suggesting the particular terms of the auction contract comport with industry standards and it is emphatically not the court's duty to explore the subject on Plaintiff's behalf.[7] In fact, the record contains facts that call into question the commercial reasonableness of the auction. For instance, Defendant asserts that Plaintiff instructed that everything be disposed of at the auction, regardless of price, which caused the proceeds of the sale to be greatly reduced. (Doc. # 29 at 2). Additionally, Defendant contends that he was led to believe that there would be a reasonable effort to publicize the inventory of the auction ahead of time to generate interest among potential bidders. (*Id.*) However, the auction was not publicized ahead of time and was held on the same day that the auction agreement was returned to DeanCo. (*Id.*) When the Rule 56 record is viewed in a light most favorable to the nonmovant (i.e., Defendant), Plaintiff has failed to show that the auction was commercially reasonable as a matter of law.

4.   **Request for Attorney's Fees to be Granted.**

The Loan Documents are unambiguous and clearly provide for the recovery of attorney's fees and costs incurred in collecting the Notes. Specifically, each Promissory Note provides that

---

[6] For example (and to use an absurd one), an unadvertised auction held in a sewer and left open for only eight minutes would likely not be considered commercially reasonable.

[7] The only authority Plaintiff cites, *Leasing Serv. Corp. v. River City Constr., Inc.*, involves an auction where the lender promoted the auction in two newspapers and a magazine before the auction was to be held. *Leasing Serv. Corp.,* 743 F.2d at 874.

"Borrower shall pay all of [Plaintiff's] reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding."  (Docs. # 1-1 at 2 and 1-2 at 3; *see* Doc. # 27-1 ¶¶ 4-5).  Each Guaranty also provides for the recovery of attorneys' fees.  (Docs. # 27-1 ¶ 7 and 1-3 at 4, 10).  Under Alabama law, it is well-settled that provisions relating to the payment of attorney's fees are enforceable.  *See, e.g.*, *James v. James*, 768 So. 2d 356, 360 (Ala. 2000) (holding that in Alabama one can recover for attorneys' fees if provided for in a statute, a contract, or by special equity); *Knight v. Hired Hand Green, Inc.*, 775 So. 2d 218, 222 (Ala. Civ. App. 1999) (holding that the plaintiff "was necessarily entitled to . . . an attorney fee for collection of that balance, pursuant to the clear terms of the contract").

The affidavit of Jason Woodard, attached to Plaintiff's Evidentiary Submission as Exhibit 2, establishes that, as of December 30, 2010, the fees and expenses charged by Burr & Forman LLP for services rendered to Plaintiff in connection with the collection of the Loans amount to $12,071.25, including attorneys' fees in the amount of $11,041.00 (based on approximately fifty-seven hours of work) and expenses in the amount of $1,030.25.  (Doc. # 27-2 ¶ 6).  Woodard's affidavit further establishes that those fees and expenses are reasonable.  (Doc. # 27-2 ¶ 7).

Although Plaintiff's request for fees and expenses is amply supported, it also is premature, particularly in light of the existence of a fact issue regarding the commercial reasonableness of the auction sale.  Thus, while Plaintiff is no doubt entitled to recover attorneys' fees and costs incurred in enforcing the Notes, and Plaintiff's request for an award of attorneys' fees and costs in this action is reasonable and due to be granted, *see Robbins v. Smith*, 495 So. 2d 577, 580 (Ala. 1986) (holding

that a "reasonable attorney fee may be set by the court in its discretion [and] '[t]he court is presumed to have knowledge, even without evidence, from which it may set such a fee'"), the request at this point is premature. The better course will be for the trier of fact to entertain a request for fees and costs as part of the litigation of the damages issues in this case.

## IV.   CONCLUSION

For the reasons outlined above, the court finds Plaintiff's Motion for Summary Judgment is due to be granted in part and denied in part. This case will be set for pretrial by separate order.

**DONE** and **ORDERED** this ____1st____ day of September, 2011.

                                                               _____
                                                               **R. DAVID PROCTOR**
                                                               UNITED STATES DISTRICT JUDGE